# Exhibit 1

**COZEN O'CONNOR**
By:  Paul K. Leary, Jr., Esq. (85402)
By:  Nicholas A. Karwacki, Esq. (320773)
By:  Dylan M. Alper, Esq. (313710)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
T:  (215) 665-2000
F:  (215) 665-2013
pleary@cozen.com
nkarwacki@cozen.com
dalper@cozen.com

**BURNS WHITE LLC**
By:  Richard S. Margulies, Esq. (62306)
By:  Elizabeth A. Williams Esquire (206548)
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(215) 587-1600 – Telephone
(215) 587-1699 – Facsimile
rsmargulies@burnswhite.com
eawilliams@burnswhite.com

*Attorneys for Defendants,*
*Temple University Hospital, Inc. d/b/a*
*Temple University Hospital, Temple*
*University Health System and/or Temple*
*Health and Temple University Health System,*
*Inc. d/b/a Temple University Health System,*
*Temple University Hospital and/or Temple*
*Health*

*Filed and Attested by the*
*Office of Judicial Records*
*04 Dec 2024 10:50 am*
*C. GILLIAM*

| | |
|---|---|
| C.M.F., a Minor, by and through the Guardian of his estate, FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA, et al.<br><br>           v.<br><br>TEMPLE UNIVERSITY HOSPITAL, INC. d/b/a TEMPLE UNIVERSITY HOSPITAL, et al.<br><br>           v.<br><br>CLINTON TURNER, M.D. and NISHANTH SIDDURI, M.D. | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA<br><br>NOVEMBER 2024 TERM<br>No. 00047<br><br>JURY TRIAL DEMANDED |

**JOINDER COMPLAINT DIRECTED TO ADDITIONAL DEFENDANTS,
CLINTON A. TURNER, M.D. AND NISHANTH SIDDURI, M.D.**

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  <u>THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.</u>

<u>IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.</u>

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION
SERVICE
One Reading Center
Philadelphia, Pennsylvania  19107
Telephone:  215-238-1701

## AVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u ostros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME FOR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION
LEGAL
One Reading Center
Filadelfia, Pennsylvania  19107
Telefono:  215-238-1701

2

Case ID: 241100047

**COZEN O'CONNOR**
By:  Paul K. Leary, Jr., Esq. (85402)
By:  Nicholas A. Karwacki, Esq. (320773)
By:  Dylan M. Alper, Esq. (313710)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
T:  (215) 665-2000
F:  (215) 665-2013
pleary@cozen.com
nkarwacki@cozen.com
dalper@cozen.com

*Attorneys for Defendants,*
*Temple University Hospital, Inc. d/b/a*
*Temple University Hospital, Temple*
*University Health System and/or Temple*
*Health and Temple University Health System,*
*Inc. d/b/a Temple University Health System,*
*Temple University Hospital and/or Temple*
*Health*

**BURNS WHITE LLC**
By:  Richard S. Margulies, Esq. (62306)
By:  Elizabeth A. Williams Esquire (206548)
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(215) 587-1600 – Telephone
(215) 587-1699 – Facsimile
rsmargulies@burnswhite.com
eawilliams@burnswhite.com

| | |
|---|---|
| C.M.F., a Minor, by and through the Guardian of his estate, FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA, et al.<br><br>       v.<br><br>TEMPLE UNIVERSITY HOSPITAL, INC. d/b/a TEMPLE UNIVERSITY HOSPITAL, et al.<br><br>       v.<br><br>CLINTON TURNER, M.D. and NISHANTH SIDDURI, M.D. | COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA<br><br>NOVEMBER 2024 TERM<br>No. 00047<br><br>JURY TRIAL DEMANDED |

3

Case ID: 241100047

### JOINDER COMPLAINT DIRECTED TO ADDITIONAL DEFENDANTS, <u>CLINTON A. TURNER, M.D. AND NISHANTH SIDDURI, M.D.</u>

Defendants, Temple University Hospital, Inc. d/b/a Temple University Hospital, Temple University Health System and/or Temple Health and Temple University Health System, Inc. d/b/a Temple University Health System, Temple University Hospital and/or Temple Health (hereinafter "Original Defendants") by and through their counsel, Burns White and Cozen O'Connor, hereby aver as follows:

1. Plaintiffs instituted this medical malpractice action by filing a Complaint along with Certificates of Merit on October 31, 2024. <u>See</u> Plaintiffs' Complaint attached hereto as Exhibit "A." Service was effected on both named defendants on November 6, 2024.

2. This matter involves allegations of medical negligence with regard to the labor of Plaintiff Corkell Maldonado and the delivery of minor-Plaintiff C.M.F. beginning on or about July 20, 2023, and continuing until the time of C.M.F.'s delivery on July 22, 2023.  Plaintiffs aver that the Original Defendants' alleged failure to properly and timely deliver C.M.F. led to C.M.F. suffering from severe hypoxic ischemic brain damage and profound related disabilities.  <u>See</u> Exhibit "A."

3. Specifically, Plaintiffs allege that on July 20, 2023, Ms. Maldonado presented to Temple University Hospital and came under the care of Dr. Turner and Dr. Sidduri, among other hospital providers.  <u>See</u> Exhibit "A."

4. It is alleged that Dr. Turner and Dr. Sidduri were physicians involved with the labor and/or delivery of Ms. Maldonado and C.M.F., among other hospital providers, at various times beginning on or about July 20, 2023, and continuing until the time of C.M.F.'s delivery on July 22, 2023. <u>See</u> Exhibit "A."

Case ID: 241100047

5.      During the time that Dr. Turner and Dr. Sidduri were involved with the treatment and care of Ms. Maldonado, they were not employees or agents of Original Defendants.

6.      Original Defendants assert that if Plaintiffs' claims are proven, specifically with respect to any care provided by Dr. Turner and/or Dr. Sidduri, all allegations being specifically denied, then Additional Defendants, Dr. Turner and/or Dr. Sidduri, are solely liable on the Plaintiffs' cause of action for any negligent acts or omissions described in the Complaint.

7.      Original Defendants assert that if Plaintiffs' claims are proven, specifically for any care by Dr. Turner and/or Dr. Sidduri, all allegations being specifically denied, then Additional Defendants Dr. Turner and/or Dr. Sidduri, are jointly and/or severally liable with the Original Defendants on the Plaintiffs' cause of action for any negligent acts or omissions described in the Complaint.

**WHEREFORE,** Original Defendants Temple University Hospital, Inc. d/b/a Temple University Hospital, Temple University Health System and/or Temple Health and Temple University Health System, Inc. d/b/a Temple University Health System, Temple University Hospital and/or Temple Health allege that Additional Defendants Clinton A. Turner, M.D. and/or Nishanth Sidduri, M.D. are alone liable to Plaintiffs, jointly and/or severally liable to Plaintiffs, or are liable over to Original Defendants for contribution and/or indemnification, together with the appropriate costs and fees.

### COUNT I: NEGLIGENCE
### ORIGINAL DEFENDANTS V. CLINTON A. TURNER, M.D.

8.      Original Defendants incorporate the preceding paragraphs as though set forth at length herein.

9.      Original Defendants also incorporate by reference the factual averments of Plaintiffs' Complaint, without admitting the truth of such averments.

Case ID: 241100047

10.    Original Defendants deny liability for the injuries alleged in Plaintiffs' Complaint, the allegations of which are incorporated herein by reference.  See Exhibit "A."

11.    At all times relevant hereto, Dr. Turner was not employed by Original Defendants, nor was he acting within the scope or course of their agency and employment while treating Ms. Maldonado and C.M.F.

12.    According to Plaintiffs' Complaint, Plaintiffs' providers, including Dr. Turner, negligently treated Ms. Maldonado and C.M.F. as follows:

a.    Failure to appropriately manage the patient's labor and delivery;

b.    Failure to ensure appropriate informed consent is obtained, including but not limited to adequately informing the patients of their conditions, the applicable risks of said conditions, and advising them on the most prudent course of treatment;

c.    Failure to accurately and thoroughly record in the medical records all pertinent aspects of the condition of the patients and the care provided, including fetal heart rate findings, the progress of labor, vital signs, other actions taken, and/or pertinent information;

d.    Failure to be aware of and completely appreciate the risks of this pregnancy, labor, and delivery, including but not limited to prenatal history, gestational hypertension and/or preeclampsia, abnormal vital signs, fetal heartrate abnormalities, insufficient progress of labor, excessive uterine activity, fetal intolerance of labor, etc. and timely advocate for change in the plan of care;

e.    Failure to be aware of, understand, and/or appreciate the risks of neurologic injury from trauma and/or hypoxia-ischemia during the labor and delivery period and take appropriate action to avoid the same;

f.    Failure to understand the risks of induction agents including Pitocin/Oxytocin and avoid injudicious use of the same;

g.    Failure to recognize evidence of excessive uterine activity, appreciate the risks of excessive uterine activity, and/or avoid excessive uterine activity;

h.    Failure to carefully assess for, recognize, and/or treat non-reassuring findings during this labor and delivery, including but not limited to fetal heartrate abnormalities, excessive uterine activity, abnormal lab values, abnormal vital signs, insufficient progress of labor, etc., and treat for the same including intrauterine resuscitation measures, intravenous fluids, repositioning, oxygen, timely notify the patients' provider(s) or physician(s) including notification of a surgical team, and advocate for and or perform earlier delivery via C-section;

i.    Failure to carefully monitor the condition of mother and baby so as to avoid the intrapartum development of hypoxic-ischemic injury;

1220898.v1

Case ID: 241100047

j.    Failure to perform appropriate and necessary intrapartum fetal evaluations and or interpret abnormal signs and/or symptoms and intervene sooner;

k.    Failure to ensure that the attending physician was adequately apprised of the patients' condition;

1. Failure to ensure appropriate level of oversight and or supervision of residents, fellows, or other doctors in training;

m.    Failure to timely appreciate non-reassuring fetal status including fetal distress and/or non-reassuring fetal status, and, or fetal intolerance to labor, and obtain consult or treatment by the patients' provider(s) or physician(s);

n.    Failure to recognize that during labor there were non-reassuring fetal heart rate changes including but not limited to loss of accelerations, reduced variability, and/or variable late prolonged decelerations, and report the same to the physician(s) and advocate for changes in the plan of care including earlier delivery by cesarean section;

o.    Failure to follow physician orders;

p.    Failure to be aware that the non-reassuring changes in the patients' condition can and did reflect a baby who was at risk for developing hypoxia-ischemia and suffering neurologic injury;

q.    Failure to timely and adequately communicate among other healthcare professionals regarding the status of mother and unborn baby, including advocacy for and/or initiation of changes in the plan of care and earlier delivery;

r.    Failure to timely take steps to move towards and/or advocate for earlier delivery by cesarean section of the unborn baby for non-reassuring fetal condition, including but not limited to intolerance of labor;

s.    Failure to be aware of and notify physician(s) and/or nurse(s) of signs of potential adverse intrapartum in utero events, including but not limited to late decelerations, variable decelerations, prolonged decelerations, decreased variability, and advocate for changes to the plan of care;

t.    Failure to advocate for and/or perform interventions and implement changes in the plan of care including but not limited to intrauterine resuscitation measures, discontinuation of Pitocin, abandoning attempts at vaginal delivery, and earlier delivery via Cesarean section;

u.    Failure to advocate for and/or provide appropriate care and treatment during the labor, delivery period and, if necessary, utilize the chain of command to effectuate the same if/when notification of the concerning signs and symptoms were not immediately responded to;

v.    Failure to timely and adequately inform and/or mobilize the necessary surgical personnel and equipment in order to perform a timely delivery;

1220898.v1

Case ID: 241100047

w.      Failure to timely advocate for and/or perform a cesarean section to avoid hypoxia-ischemia;

x.      Failure to maintain and provide complete and adequate medical record documentation including but not limited to fetal monitoring, nursing notes, discharge summary, operative reports, resuscitation log, plan of care regarding notification of physicians, nurses and staff for assessment and treatment;

y.      Failure to promulgate, implement, maintain, and or follow reasonable and appropriate policies and procedures;

z.      Failure to maintain appropriate labor and delivery staffing to ensure the provision of reasonable and appropriate patient care;

aa. Failure to avoid any other breaches of the standard of care revealed during discovery.

<u>See</u> Exhibit "A" at ¶ 78.

13.     According to Plaintiffs' Complaint, as a direct and proximate cause of the alleged negligence of Plaintiffs' providers, including Dr. Turner, Plaintiffs suffered severe and permanent injuries.  <u>See</u> Exhibit "A".

14.     Original Defendants deny any and all liability, but if upon adjudication of the within cause of action, it is determined that negligence, carelessness, and/or lack of due care occurred, and did in some way cause Plaintiffs to experience injuries, Original Defendants aver that Additional Defendant Dr. Turner is solely liable to Plaintiffs, or is jointly and/or severally liable with Original Defendants.

15.     In the event Plaintiffs receive a judgment against Original Defendants on the within cause of action, then Additional Defendant Dr. Turner is liable for said negligence, carelessness and/or lack of due care and is liable over to the Original Defendants by way of indemnity and/or contribution as the Court may find, for all or part of such sum as may be found against Original Defendants, by reason of said negligence, carelessness, and/or lack of due care of Additional Defendant Dr. Turner.

1220898.v1

Case ID: 241100047

**WHEREFORE**, Original Defendants Temple University Hospital, Inc. d/b/a Temple University Hospital, Temple University Health System and/or Temple Health and Temple University Health System, Inc. d/b/a Temple University Health System, Temple University Hospital and/or Temple Health allege that Additional Defendants Clinton A. Turner, M.D. and/or Nishanth Sidduri, M.D. are alone liable to Plaintiffs, jointly and/or severally liable to Plaintiffs, or are liable over to Original Defendants for contribution and/or indemnification, together with the appropriate costs and fees.

<div align="center">

**COUNT II: NEGLIGENCE**
**ORIGINAL DEFENDANTS V. NISHANTH SIDDURI, M.D.**

</div>

16.    Original Defendants incorporate the preceding paragraphs as though set forth at length herein.

17.    Original Defendants also incorporate by reference the factual averments of Plaintiffs' Complaint, without admitting the truth of such averments.

18.    Original Defendants deny liability for the injuries alleged in Plaintiffs' Complaint, the allegations of which are incorporated herein by reference.  <u>See</u> Exhibit "A."

19.    At all times relevant hereto, Dr. Sidduri was not employed by Original Defendants, nor was he acting within the scope or course of his agency and employment while treating Ms. Maldonado and C.M.F.

20.    According to Plaintiffs' Complaint, Plaintiffs' providers, including Dr. Sidduri, negligently treated Ms. Maldonado and C.M.F. as follows:

> a.    Failure to appropriately manage the patient's labor and delivery;
> b.    Failure to ensure appropriate informed consent is obtained, including but not limited to adequately informing the patients of their conditions, the applicable risks of said conditions, and advising them on the most prudent course of treatment;
> c.    Failure to accurately and thoroughly record in the medical records all pertinent aspects of the condition of the patients and the care

9

Case ID: 241100047

provided, including fetal heart rate findings, the progress of labor, vital signs, other actions taken, and/or pertinent information;

d.    Failure to be aware of and completely appreciate the risks of this pregnancy, labor, and delivery, including but not limited to prenatal history, gestational hypertension and/or preeclampsia, abnormal vital signs, fetal heartrate abnormalities, insufficient progress of labor, excessive uterine activity, fetal intolerance of labor, etc. and timely advocate for change in the plan of care;

e.    Failure to be aware of, understand, and/or appreciate the risks of neurologic injury from trauma and/or hypoxia-ischemia during the labor and delivery period and take appropriate action to avoid the same;

f.    Failure to understand the risks of induction agents including Pitocin/Oxytocin and avoid injudicious use of the same;

g.    Failure to recognize evidence of excessive uterine activity, appreciate the risks of excessive uterine activity, and/or avoid excessive uterine activity;

h.    Failure to carefully assess for, recognize, and/or treat non-reassuring findings during this labor and delivery, including but not limited to fetal heartrate abnormalities, excessive uterine activity, abnormal lab values, abnormal vital signs, insufficient progress of labor, etc., and treat for the same including intrauterine resuscitation measures, intravenous fluids, repositioning, oxygen, timely notify the patients' provider(s) or physician(s) including notification of a surgical team, and advocate for and or perform earlier delivery via C-section;

i.    Failure to carefully monitor the condition of mother and baby so as to avoid the intrapartum development of hypoxic-ischemic injury;

j.    Failure to perform appropriate and necessary intrapartum fetal evaluations and or interpret abnormal signs and/or symptoms and intervene sooner;

k.    Failure to ensure that the attending physician was adequately apprised of the patients' condition;

1. Failure to ensure appropriate level of oversight and or supervision of residents, fellows, or other doctors in training;

m.    Failure to timely appreciate non-reassuring fetal status including fetal distress and/or non-reassuring fetal status, and, or fetal intolerance to labor, and obtain consult or treatment by the patients' provider(s) or physician(s);

n.    Failure to recognize that during labor there were non-reassuring fetal heart rate changes including but not limited to loss of accelerations, reduced variability, and/or variable late prolonged decelerations, and report the same to the physician(s) and advocate for changes in the plan of care including earlier delivery by cesarean section;

o.    Failure to follow physician orders;

p.    Failure to be aware that the non-reassuring changes in the patients' condition can and did reflect a baby who was at risk for developing hypoxia-ischemia and suffering neurologic injury;

10

Case ID: 241100047

q.      Failure to timely and adequately communicate among other healthcare professionals regarding the status of mother and unborn baby, including advocacy for and/or initiation of changes in the plan of care and earlier delivery;

r.      Failure to timely take steps to move towards and/or advocate for earlier delivery by cesarean section of the unborn baby for non-reassuring fetal condition, including but not limited to intolerance of labor;

s.      Failure to be aware of and notify physician(s) and/or nurse(s) of signs of potential adverse intrapartum in utero events, including but not limited to late decelerations, variable decelerations, prolonged decelerations, decreased variability, and advocate for changes to the plan of care;

t.      Failure to advocate for and/or perform interventions and implement changes in the plan of care including but not limited to intrauterine resuscitation measures, discontinuation of Pitocin, abandoning attempts at vaginal delivery, and earlier delivery via Cesarean section;

u.      Failure to advocate for and/or provide appropriate care and treatment during the labor, delivery period and, if necessary, utilize the chain of command to effectuate the same if/when notification of the concerning signs and symptoms were not immediately responded to;

v.      Failure to timely and adequately inform and/or mobilize the necessary surgical personnel and equipment in order to perform a timely delivery;

w.      Failure to timely advocate for and/or perform a cesarean section to avoid hypoxia-ischemia;

x.      Failure to maintain and provide complete and adequate medical record documentation including but not limited to fetal monitoring, nursing notes, discharge summary, operative reports, resuscitation log, plan of care regarding notification of physicians, nurses and staff for assessment and treatment;

y.      Failure to promulgate, implement, maintain, and or follow reasonable and appropriate policies and procedures;

z.      Failure to maintain appropriate labor and delivery staffing to ensure the provision of reasonable and appropriate patient care;

aa. Failure to avoid any other breaches of the standard of care revealed during discovery.

See Exhibit "A" at ¶ 78.

1220898.v1

Case ID: 241100047

21.     According to Plaintiffs' Complaint, as a direct and proximate cause of the alleged negligence of Plaintiffs' providers, including Dr. Sidduri, Plaintiffs suffered severe and permanent injuries.  See Exhibit "A".

22.     Original Defendants deny any and all liability, but if upon adjudication of the within cause of action, it is determined that negligence, carelessness, and/or lack of due care occurred, and did in some way cause Plaintiffs to experience injuries, Original Defendants aver that Additional Defendant Dr. Sidduri is solely liable to Plaintiffs, or is jointly and/or severally liable with Original Defendants.

23.     In the event Plaintiffs receive a judgment against Original Defendants on the within cause of action, then Additional Defendant Dr. Sidduri is liable for said negligence, carelessness and/or lack of due care and is liable over to the Original Defendants by way of indemnity and/or contribution as the Court may find, for all or part of such sum as may be found against Original Defendants, by reason of said negligence, carelessness, and/or lack of due care of Additional Defendant Dr. Sidduri.

**WHEREFORE**, Original Defendants Temple University Hospital, Inc. d/b/a Temple University Hospital, Temple University Health System and/or Temple Health and Temple University Health System, Inc. d/b/a Temple University Health System, Temple University Hospital and/or Temple Health allege that Additional Defendants Clinton A. Turner, M.D. and/or Nishanth Sidduri, M.D. are alone liable to Plaintiffs, jointly and/or severally liable to Plaintiffs, or are liable over to Original Defendants for contribution and/or indemnification, together with the appropriate costs and fees.

1220898.v1

Case ID: 241100047

Respectfully submitted,

**COZEN O'CONNOR**

BY:   _/s/ Nicholas A. Karwacki_
        PAUL K. LEARY, JR., ESQ.
        NICHOLAS A. KARWACKI, ESQ.
        BY:  DYLAN M. ALPER, ESQ.


**BURNS WHITE**

BY: _____
        RICHARD S. MARGULIES, ESQ.
        ELIZABETH A. WILLIAMS, ESQ.

        *Attorneys for Defendants*
        *Temple University Hospital, Inc. d/b/a*
        *Temple University Hospital, Temple*
        *University Health System and/or Temple*
        *Health and Temple University Health*
        *System, Inc. d/b/a Temple University Health*
        *System, Temple University Hospital and/or*
        *Temple Health*


Date:  December 4, 2024

Case ID: 241100047

## CERTIFICATE OF SERVICE

I, Elizabeth A. Williams, Esquire, do hereby certify that on this day I caused a true copy of the foregoing Joinder Complaint Directed to Additional Defendants Clinton A. Turner, M.D. and Nishanth Sidduri, M.D. to be served as follows:

### BY PROCESS SERVER

Clinton A. Turner, M.D.
Delaware Valley Community Health
401 W Allegheny Ave
Philadelphia PA 19133
Phone: 215-291-2500

Nishanth Sidduri, M.D.
Delaware Valley Community Health
401 W Allegheny Ave
Philadelphia PA 19133
Phone: 215-291-2500

### BY THE COURT'S ELECTRONIC FILING

Jack Beam, Esquire
Court I.D. No. 52519
BEAM LEGAL TEAM
954 W. Washington Blvd. $^1/_2$15
Chicago, IL 60607
(312) 733-0930 Phone
(312) 733-0921 Fax
jbeam@beamlegalteam.com

Jordan Strokovsky, Esquire
Court I.D. No. 318811
STROKOVSKY LLC
1650 Market St.,
#3600 Philadelphia, PA 19103
(215) 317-6545 Phone
(215) 501-5556 Fax
jordan@actionafterinjury.com

_____
ELIZABETH A. WILLIAMS, ESQUIRE

Date:  December 4, 2024

14

Case ID: 241100047

## **VERIFICATION**

I, Anna Wirth-Granlund, Director, Risk Finance and Insurance, hereby state that I am authorized to make this verification on behalf of Temple University Hospital, Inc. and Temple University Health System Inc., defendants in the within action, and verify that the statements made in the foregoing **JOINDER COMPLAINT DIRECTED TO ADDITIONAL DEFENDANTS, CLINTON A. TURNER, M.D. AND NISHANTH SIDDURI, M.D.** are true and correct to the best of my knowledge, information and belief. I have relied upon the advice and assistance of counsel in making this Verification. I understand that this Verification is made subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities.

**Dated:** 12/2/24

**By:** _____
Anna Wirth-Granlund,
Director, Risk Finance, and Insurance
Temple University Hospital, Inc.

Case ID: 241100047

# EXHIBIT A

Case ID: 241100047

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | **NOVEMBER 2024** **00047** |
| | E-Filing Number: 2410074393 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| C.M.F. | TEMPLE UNIVERSITY HOSPITAL, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| FIVE RADNOR CORPORATE CENTER 100 MATSONFORD ROAD, SUITE 450 RADNOR PA 19087 | 3509 N BROAD STREET, 9TH FLOOR PHILADELPHIA PA 19140 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA | TEMPLE UNIVERSITY HEALTH SYSTEM, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| FIVE RADNOR CORPORATE CENTER 100 MATSONFORD ROAD, SUITE 450 RADNOR PA 19087 | 3509 N BROAD STREET, 9TH FLOOR PHILADELPHIA PA 19140 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CORKELL MALDONADO | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2104 E. MONMOUTH ST. PHILADELPHIA PA 19134 | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 3 | 2 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal  ☐ Writ of Summons  ☐ Transfer From Other Jurisdictions | | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less  ☒ More than $50,000.00 | ☐ Arbitration  ☒ Jury  ☐ Non-Jury  ☐ Other: | ☐ Mass Tort  ☐ Savings Action  ☐ Petition | ☐ Commerce  ☐ Minor Court Appeal  ☐ Statutory Appeals | ☐ Settlement  ☐ Minors  ☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 2M – MALPRACTICE – MEDICAL |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** OCT **31** 2024 **L. BREWINGTON** | IS CASE SUBJECT TO COORDINATION ORDER?  YES    NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>C.M.F. , FIDUCIARY TRUST COMPANY</u>
<u>INTERNATIONAL OF PENNSYLVANIA , COR</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JACK BEAM | 954 W. WASHINGTON BLVD., #215 CHICAGO IL 60607 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (312)733-0930 | (312)733-0921 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 52519 | JBeam@BeamLegalTeam.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JACK BEAM | Thursday, October 31, 2024, 06:56 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Case ID: 241100047

<table>
<tr><td>

Jack Beam, Esquire
Court I.D. No. 52519
BEAM LEGAL TEAM
954 W. Washington Blvd. #215
Chicago, IL 60607
(312) 733-0930  Phone
(312) 733-0921  Fax
jbeam@beamlegalteam.com

**Attorney for Plaintiffs**

</td><td>

Jordan Strokovsky, Esquire
Court I.D. No. 318812
STROKOVSKY LLC
1650 Market St., #3600
Philadelphia, PA 19103
(215) 317-6545 Phone
(215) 501-5556 Fax
jordan@actionafterinjury.com

**Co-Counsel for Plaintiffs**

</td></tr>
</table>

*Filed and Attested by the*
*Office of Judicial Records*
*31 OCT 2024 03:30 pm*
*J. BREWINGTON*

| | | |
|---|---|---|
| **C.M.F., a Minor, by and through the Guardian of his estate, FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA,** | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| *Five Radnor Corporate Center* | : | |
| *100 Matsonford Road, Suite 450* | : | October Term, 2024 |
| *Radnor, PA 19087* | : | |
| | : | No.: |
| | : | |
| **and** | : | |
| | : | MAJOR JURY TRIAL IS DEMANDED. |
| **CORKELL MALDONADO, individually** | : | |
| **and in her own right,** | : | |
| *2104 E. Monmouth St.* | : | |
| *Philadelphia, Pennsylvania 19134* | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **TEMPLE UNIVERSITY HOSPITAL,** | : | |
| **INC. d/b/a TEMPLE UNIVERSITY** | : | |
| **HOSPITAL, TEMPLE UNIVERSITY** | : | |
| **HEALTH SYSTEM, and/or TEMPLE** | : | |
| **HEALTH** | : | |
| *3509 n. Broad Street, 9th Floor* | : | |
| *Philadelphia, PA 19140* | : | |
| | : | |
| **and** | : | |
| | : | |
| **TEMPLE UNIVERSITY HEALTH** | : | |
| **SYSTEM, INC. d/b/a TEMPLE** | : | |
| **UNIVERSITY HEALTH SYSTEM,** | : | |
| **TEMPLE UNIVERSITY HOSPITAL** | : | |
| **and/or TEMPLE HEALTH** | : | |

Case ID: 241100047

Case ID: 241100047

*3509 n. Broad Street, 9th Floor*
*Philadelphia, PA 19140*                          :
                                                  :
                                                  :
    Defendants.                                   :
                                                  :
                                                  :

| NOTICE | AVISO |
|---|---|
| **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.** *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* **Philadelphia Bar Association Lawyer Referral and Information Service One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-6333 TTY (215) 451-6197** | **Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.** *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* **Asociacion De Licenciados De Filadelfia Servicio De Referencia E Informacion Legal One Reading Center Filadelfia, Pennsylvania 19107 (215) 238-6333 TTY (215) 451-6197** |

## COMPLAINT IN CIVIL-ACTION MEDICAL PROFESSIONAL LIABILITY

## PARTIES TO THE CAUSE OF ACTION

2

Case ID: 241100047
Case ID: 241100047

1.     FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA, is the Guardian of the Estate of the minor-Plaintiff, C.M.F., date of birth 7-22-2023. Said minor currently resides with his natural mother, Corkell Maldonado, at 2104 E. Monmouth St, Philadelphia, Pennsylvania 19134.

2.     Plaintiff, CORKELL MALDONADO ("Ms. Maldonado"), individually, is the natural mother of C.M.F. ("minor-Plaintiff" and/or "Baby C.M.F."), and resides at 2104 E. Monmouth St, Philadelphia, Pennsylvania 19134.

3.     Plaintiff, FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA, has a principal place of business located at Five Radnor Corporate Center, 100 Matsonford Road, Suite 450, Radnor, Pennsylvania 19087. Plaintiffs, CORKELL MALDONADO, individually, and FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA, bring this action in accordance with Pennsylvania Rules of Civil Procedure 2026-2031, on behalf of the minor-Plaintiff, C.M.F.

4.     Defendant, TEMPLE UNIVERSITY HOSPITAL, INC. d/b/a TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM, and/or TEMPLE HEALTH (hereinafter "Defendant Temple University Hospital") is/was a Pennsylvania corporation, organized, existing, and doing business in the Commonwealth of Pennsylvania, offering medical services to the public with an office for service located at 3509 North Broad Street, 9th Floor, Philadelphia, PA 19140. At all times relevant to the matters set forth in this Complaint, Defendant Temple University Hospital owned, maintained, controlled and/or operated a hospital that provides care and treatment of laboring mothers, unborn babies, and newborns, including the provision of prenatal care, labor, and delivery culminating in said birth.

Case ID: 241100047
Case ID: 241100047

5.      In accordance with Pa.R.C.P. 1042.2, Plaintiffs are asserting claims of professional negligence / vicarious liability against Defendant Temple University Hospital for the acts/omissions of its actual, apparent, and/or ostensible agents, servants, and/or employees including April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; and Maeve Serino, M.D. Additionally, Plaintiffs are also asserting direct claims of corporate negligence against Defendant Temple University Hospital. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant is attached hereto.

6.      Defendant TEMPLE UNIVERSITY HEALTH SYSTEM, INC. d/b/a TEMPLE UNIVERSITY HEALTH SYSTEM, TEMPLE UNIVERSITY HOSPITAL, and/or TEMPLE HEALTH (hereinafter "Defendant Temple University Health System") is/was a Pennsylvania corporation, organized, existing, and doing business in the Commonwealth of Pennsylvania, offering medical services to the public and with an office for service located at 3509 North Broad Street, 9th Floor, Philadelphia, PA 19140. At all times relevant to this Complaint, Defendant Temple University Health System vicariously owned, maintained, controlled and/or operated a hospital that provides care and treatment of laboring mothers, unborn babies, and newborns, including the provision of prenatal care, labor, and delivery culminating in said birth. Upon information and belief, said Defendant was at the time of care and treatment part of or maintained some affiliation and/or association with Defendant Temple University Hospital.

7.      In accordance with Pa.R.C.P. 1042.2, Plaintiffs are asserting claims of professional negligence / vicarious liability against Defendant Temple University Health System for the acts/omissions of its actual, apparent, and/or ostensible agents, servants, and/or employees including April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-

4

Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; and Maeve Serino, M.D. Additionally, Plaintiffs are also asserting direct claims of corporate negligence against Defendant Temple University Health System. Pursuant to Pa. R. Civ. P. 1042.3, a Certificate of Merit as to this defendant is attached hereto.

8.      Upon information and belief, at all times relevant hereto, physicians, physician assistants, residents, interns, fellows, nurses, staff and any other healthcare providers participating in the prenatal care, labor, and/or delivery of Corkell Maldonado and the minor-Plaintiff C.M.F., beginning on or about July 20, 2023, and continuing until the time of the minor's delivery at Temple University Hospital at approximately 12:49 p.m. on July 22, 2023, were the employees, servants, and/or actual, ostensible and/or apparent agents of Defendant Temple University Hospital and/or Defendant Temple University Health System. Said employees, servants and/or actual, ostensible and/or apparent agents, at all relevant times, were acting within the course and scope of their employment, service and/or agency with Defendant Temple University Hospital and/or Defendant Temple University Health System.

**FACTUAL ALLEGATIONS**

9.      On or about July 3, 2023, the minor-plaintiff C.M.F., while in utero of his mother, Corkell Maldonado, was seen at Esperanza Health Center, who was at that time was 37 2/7 weeks gestation. Ms. Maldonado had a history of thrombocytopenia during the first trimester, a blood pressure 146/84 with repeat blood pressure of 130/85 and trace protein on urine dip. Stephanie Senyo, PA-C assessed Ms. Maldonado and noted, in part, "initial BP 146/84, repeat 130/85. Asymptomatic for pre-eclampsia and trace protein on urine dip. Warning signs given." The Estimated due date for the minor-Plaintiff was July 23, 2023.

10.     On July 17, 2023, the minor-plaintiff C.M.F., while in utero of his mother, Corkell

5

Case ID: 241100047
Case ID: 241100047

Maldonado, was seen at Esperanza Health Center at 39 1/7 weeks gestation. Dr. Faith Pullinger noted Ms. Maldonado had a normal blood pressure of 134/84 with "no s/sx of PEC" and "would like scheduled IOL."

11.     Ms. Maldonado, with the minor-Plaintiff C.M.F., *in utero,* presented to Temple University Hospital on July 20, 2023, at approximately 1:07 pm. Upon his birth on July 22, 2023, the minor-Plaintiff, C.M.F., was admitted as a patient in the Neonatal Intensive Care Unit ("NICU") of Defendant Temple University Hospital. He was transferred to St. Christopher Hospital for Children where he remained until September 1, 2023.

12.     Upon admission to Temple University Hospital, Petra Whitcraft, CRNP and/or Clinton Turner, M.D. noted in a history and physical that Ms. Maldonado was 39 4/7 weeks gestation who was being admitted for "induction of labor 2/2/ GHTN vs new onset Preeclampsia." NP Whitcraft further noted patient came in with "complaints of contractions since this afternoon however her initial blood pressure was elevated at 146/92." Dr. Turner further noted that on review of Ms. Maldonado's records she was noted to have "elevated blood pressure of 146/92 at her 37w appointment and patient reports that at her last appointment her blood pressure was also elevated." Ms. Maldonado denied headache, vision changes and right upper quadrant pain. She reported positive fetal movement and denied vaginal bleeding. Fetal heart tones were 120s, moderate variability, with accelerations and no decelerations. Dr. Turner noted Ms. Maldondado was admitted for induction of labor.

13.     On July 20-22, 2023 and at all times relevant herein, Ms. Maldonado and Baby C.M.F. (both *in utero* and thereafter) received care and treatment including prenatal, labor and delivery, and/or neonatal care from Defendant Temple University Hospital and/or Defendant University Health System, by and through their physicians, physician assistants, residents, interns,

Case ID: 241100047
Case ID: 241100047

fellows, nurses, staff and any other healthcare providers including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers.

14.    Ms. Maldonado's labor was induced/augmented on July 20-22, 2023 by the administration of Cytotec and Pitocin.

15.    Electronic fetal monitoring ("EFM") was initiated which initially demonstrated a baseline heart rate of 125bpm, moderate variability, accelerations, contraction frequency every 1-4 minutes and lasting 40-70 secs.

16.    Baby C.M.F. was a well-oxygenated and neurologically intact baby at the outset of the labor and delivery admission.

17.    Ms. Maldonado demonstrated abnormally elevated hypertensive blood pressures during her admission to labor and delivery on July 20-22, 2023.

18.    At or about 1425 on July 20, 2023, a total protein, urine was collected and revealed a value of 29.7 (0-11.9).

19.    At or about 14:36 on July 20, 2023, a sterile vaginal examination revealed 1/70/-2.

20.    At or about 1712 on July 20, 2023, Ms. Maldonado was administered 4mg of magnesium sulfate IVPB for seizure prophylaxis.

21.    At or about 18:59 on July 20, 2023, Ms. Maldonado was given her first dose of Cytotec, 25 mcg. She received additional doses at 22:09 on July 20, 2023, and 00:14, 02:06, 05:15, and 07:10 on July 21, 2023.

7

Case ID: 241100047
Case ID: 241100047

22.    Dr. Clinton Turner documented at 19:21 on July 20, 2023, that in triage Ms. Maldonado's blood pressures were newly elevated and she met criteria for severe preeclampsia by sustained severe range BP.

23.    At or about 0600 on July 21, 2023, charting in the flowsheets regarding the EFHM indicated a baseline heart rate of 115bpm, moderate variability, and no decelerations or accelerations. Contractions were described as irregular, lasting 60 seconds, and were mild with a soft resting tone.

24.    A foley bulb was placed at approximately 09:54 on July 21, 2023.

25.    At or about 12:00 on July 21, 2023, charting in the flowsheets regarding the EFHM indicated a baseline heart rate of 110bpm with moderate variability. Contraction frequency was noted to be every 2-7 minutes, lasting 50-60 seconds, moderate in strength, with a soft resting tone.

26.    Ms. Maldonado was started on 2mu of Pitocin to augment her labor at 12:15 on July 21, 2023. Pitocin continued to be titrated for much of the remainder of this labor admission prior to delivery and was increased to 4 mu at 14:27, to 6 mu at 15:00, to 8 mu at 17:00, to 10 mu at 20:30 and to 12 mu at 23:15 on July 21, 2023.

27.    At or about 1930 on July 21, 2023, charting in the flowsheets indicated that the following was appreciated: temperature 98.7F, pulse 73, blood pressure 158/101, fetal heartrate baseline 120bpm, moderate variability, accelerations, absent decelerations, contraction frequency 2-5 min, contraction duration 40-70 sec, moderate contraction quality, soft resting tone palpated, and "blood tinged and light meconium."

28.    At approximately 1948, Dr. Acosta performed a sterile vaginal exam which revealed 5/80/-2.

8

29.    At or about 21:00 on July 21, 2023, charting in the flowsheets indicated that the following was appreciated: temperature 98.3F, pulse 81, respirations 18, fetal heartrate baseline 120bpm, moderate variability, accelerations, no decelerations, contraction frequency 1-4 min, contraction duration 60-90 sec, moderate contraction quality, and soft resting tone palpated.

30.    At or about 00:30 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: pulse 91, blood pressure 139/90, fetal heartrate baseline 125bpm, moderate variability, no accelerations, intermittent late decelerations, contraction frequency 1-3.5 min, contraction duration 40-70 sec, moderate contraction quality, and soft resting tone palpated.

31.    At or about 00:11 on July 22, 2023 Dr. Noel was notified regarding maternal vital sign change with temperature of 101.1F, "per MD will reevaluate in 30 minutes", and Pitocin was increased to 14mu.

32.    At or about 01:30 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: pulse 83, blood pressure 126/66, fetal heartrate baseline 125bpm, minimal variability, accelerations, intermittent late decelerations, contraction frequency 2-3.5 min, contraction duration 40-70 sec, moderate contraction quality, and soft resting tone palpated.

33.    At or about 02:30 on July 22, 2023, an intrauterine pressure catheter ("IUPC") was placed to internally monitor the uterine contraction activity.

34.    At or about 03:45 on July 22, 2023, charting in the flowsheets indicated that Dr. Acosta was notified via telephone and that the following was appreciated: pulse 92, fetal heartrate baseline 115bpm, moderate variability, no accelerations, intermittent late decelerations, contraction intensity 68, resting tone 35, Montevideo units 272, contraction frequency 2-4, contraction duration 70-80 sec, moderate contraction quality, and soft resting tone palpated.

Case ID: 241100047
Case ID: 241100047

35.     At or about 03:49 a vaginal examination was performed by Dr. Harvard wherein the following was appreciated: 5cm dilation / 80% effacement / -2 station.

36.     At or about 04:04 on July 22, 2023, Tiana Acosta, M.D. appreciated the following: fetal heart rate baseline 120bpm, moderate variability, accelerations, intermittent late decelerations, and contraction frequency 2-4. At this time, Dr. Acosta noted that the plan of care was to continue to titrate Pitocin to maintain adequate contraction frequency.

37.     At or about 07:00 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: temperature 98.9F, pulse 84, blood pressure 155/101, fetal heartrate baseline 120bpm, moderate variability, no accelerations, intermittent late decelerations, contraction intensity 62, resting tone 30, Montevideo units 186, contraction frequency 3-4, contraction duration 70-80 sec, moderate contraction quality, and soft resting tone palpated.

38.     At or about 08:15 on July 22, 2023, it was noted that Ms. Maldonado was evaluated by Dr. Michelle Benassi and/or Dr. Clinton Turner for intermittent late decelerations. The plan of care at this time included continued magnesium sulfate, repositioning/OVH/amnioinfusion, check PEC labs and monitor closely.

39.     At or about 08:45 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: pulse 80, fetal heartrate baseline 130bpm, moderate variability, accelerations, recurrent late decelerations, contraction intensity 71, resting tone 22, Montevideo units 142, contraction frequency 2-3, contraction duration 70-80 sec, moderate contraction quality, and soft resting tone palpated.

40.     At or about 09:15 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: fetal heartrate baseline 130bpm, minimal variability, no accelerations, no decelerations, contraction intensity 16, resting tone 37, Montevideo units 16, contraction

10

frequency 2, contraction duration 60-100 sec, moderate contraction quality, and soft resting tone palpated.

41.    At or about 10:22 on July 22, 2023 a vaginal examination was performed by Michelle Benassi, M.D. wherein the following was appreciated: lip/rim dilation and +1 station.

42.    At or about 10:45 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: pulse 75, respirations 18, Blood pressure 136/88, fetal heartrate baseline 120bpm, minimal variability, no accelerations, no decelerations, contraction intensity 42, resting tone 0, Montevideo units 42, contraction frequency 2, contraction duration 100-110 sec, moderate contraction quality, and soft resting tone palpated.

43.    At or about 11:30 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: fetal heartrate baseline 120bpm, minimal variability, no accelerations, early decelerations, contraction intensity 33, resting tone 3, Montevideo units 33, contraction frequency 5-6, contraction duration 100 sec, moderate contraction quality, and soft resting tone palpated.

44.    At or about 11:53 on July 22, 2023 a vaginal examination was performed wherein it was appreciated that Ms. Maldonado was 10cm dilated and +1 station.

45.    At or about 12:30 on July 22, 2023, charting in the flowsheets indicated that the following was appreciated: fetal heartrate baseline 115bpm, moderate variability, accelerations, intermittent late decelerations, contraction intensity 35, resting tone 7, Montevideo units 175, contraction frequency 3-4, moderate contraction quality, and soft resting tone palpated.

46.    At or about 13:47 on July 22, 2023, Dr. Turner attested a progress note by April Dobkin, MD regarding an evaluation from 1209. Dr. Turner documented that Ms. Maldonado was now "C/C/+1. FHT's 120s/min. to mod. Var. +fetal scalp stimulation and + accels with pushing.

11

Now stage 2 labor. Cont. Pushing. Monitor closely. Alert peds to attend delivery due to intermittent cat. 2 tracing. Monitor closely. Cont. Amnioinfusion/repositioning/IVH as indicated. Hold magnesium sulfate for now." Dr. Dobkin documented in her note that there was intermittent minimal variability, overall majority moderate variability, and reassuring with scalp stim obtained.

47.      At or about 12:49 on July 22, 2023 Baby C.M.F. was eventually delivered via vaginal delivery.

48.      Baby C.M.F. was noted to have a nuchal cord at birth.

49.      Baby C.M.F. was depressed, hypotonic, not breathing, and bradycardic at birth and had APGAR scores assigned to be 1, 2, and 4 at one, five, and ten minutes respectively.

50.      Baby C.M.F. was handed to pediatrician Dr. Juan Ballesteros who resuscitated him including intubation and chest compressions.

51.      Cord blood gases were obtained which revealed an arterial pH of 6.94, pCO2 of 90, PO2 18, and base excess of -16 as well as a venous pH of 7.24, pCO2 of 36, and base excess of -12 – which is reflective of severe metabolic acidosis and acute intrapartum asphyxia.

52.      Baby C.M.F. was admitted to the Intensive Care Nursery at Temple University Hospital.

53.      Following birth Baby C.M.F. was described as dusky and hypotonic with coarse breath sounds bilaterally, neonatal encephalopathy, and respiratory distress in newborn.

54.      Placental pathology revealed final diagnoses which included unremarkable three-vessel umbilical cord and sub chorionitis – unremarkable placental tissue.

55.      Baby C.M.F.'s blood was sampled and cultured at Temple University which identified no growth and demonstrated no infection.

Case ID: 241100047
Case ID: 241100047

56.    Baby C.M.F. was transferred to St. Christopher Hospital for Children including for neuroprotective hypothermia therapy.

57.    Baby C.M.F. was admitted to St. Christopher Hospital for Children on July 22, 2023 with an admitting diagnosis including hypoxic ischemic encephalopathy (HIE).

58.    While at St. Christopher, Baby C.M.F. was noted to have elevated creatinine levels "likely secondary to HIE."

59.    While at St. Christopher, Baby C.M.F. underwent an EEG which was severely abnormal, suggestive of profound cerebral dysfunction and consistent with history of severe HIE.

60.    On July 25, 2023, while at St. Christopher, Baby C.M.F. underwent a cranial ultrasound which was reported as showing no intracranial hemorrhage and questionable diffuse increased parenchymal echogenicity.

61.    On July 26, 2023, while at St. Christopher, Baby C.M.F. underwent an MRI which was reported as showing diffuse cerebral infarction and brain swelling resulting in downward transtentorial and uncal herniation and resulting compression of the brainstem.

62.    Baby C.M.F. remained admitted at St. Christopher until September 1, 2023 during which time he received various diagnoses including neonatal encephalopathy, hypoxic ischemic encephalopathy (HIE), newborn affected by prolonged rupture of membranes, newborn affected by maternal preeclampsia, newborn affected by nuchal umbilical cord, metabolic acidosis in newborn, acute respiratory failure with hypoxia and hypercapnia, and induced hypothermia.

63.    During this labor and delivery admission, non-reassuring findings developed, including but not limited to abnormal vital signs, severe hypertension / preeclampsia, excessive uterine activity, meconium, variable/late/prolonged decelerations, and/or decreased variability,

Case ID: 241100047
Case ID: 241100047

which indicated fetal intolerance to labor and that Baby C.M.F. was at risk for hypoxia-ischemia and permanent neurologic injury.

64.     Given the clinical findings, changes in the plan of care should have been implemented including but not limited to intrauterine resuscitation measures, decreasing/discontinuing Pitocin, abandoning attempts at vaginal delivery, moving for and/or advocating for expedited delivery, and earlier delivery via cesarean section – which were not done and were below the standard of care.

65.     The failure to provide reasonable and appropriate labor and delivery care including as described herein directly and proximately caused and increased the risk of harm for Baby C.M.F. to become asphyxiated at birth and suffer hypoxic ischemic brain damage.

66.     As a direct and proximate result of his hypoxic ischemic brain damage at birth, Baby C.M.F. is now 15 months old and demonstrates severe disabilities including but not limited to the inability to sit up on his own, crawl, and fully hold his head up.

67.     As a direct and proximate result of his hypoxic ischemic brain damage at birth, Baby C.M.F. is currently receiving physical, occupational, and speech therapy and has been diagnosed with dysphagia / difficulty swallowing.

68.     As a direct and proximate result of his hypoxic ischemic brain damage at birth, Baby C.M.F. requires lifelong attendant care and special medical care and services.

69.     As a direct and proximate result of his hypoxic ischemic brain damage at birth, Baby C.M.F.'s ability to engage in normal activities of daily living, become educated, to pursue a trade or work, and earn money will be severely affected.

70.     As a direct and proximate result of the negligence and carelessness of Defendant Temple University Hospital, Defendant Temple University Health System, and/or their individual

14

healthcare providers including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers, the minor-Plaintiff suffered severe hypoxic ischemic brain damage and suffers from profound disabilities which will continue for the rest of his life.

71.    As a direct and proximate result of the negligence and carelessness of Defendant Temple University Hospital, Defendant Temple University Health System, and/or their individual healthcare providers including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers, the minor-Plaintiff suffered damages including but not limited to the following:

   a. Past, present, and future pain and suffering;
   b. Past, present, and future mental anguish;
   c. Past, present, and future humiliation;
   d. Past, present, and future embarrassment;
   e. Past, present, and future disfigurement;
   f. Past, present, and future medical expenses;
   g. Loss of future earnings / earnings capacity; and
   h. Loss of a normal life and life's pleasures.

72.    The minor-Plaintiff's injuries were caused solely and proximately by the joint, several, and/or singular negligence and carelessness of the Defendants and was due in no manner whatsoever to any act or failure on the part of the minor-Plaintiff, nor his mother.

## COUNT I: Medical Negligence / Vicarious Liability
### (Plaintiffs v. Temple University Hospital)

73.    Plaintiffs incorporate by reference the allegations contained in all previous paragraphs as if fully restated herein.

15

Case ID: 241100047

74.    On or about July 20-22, 2023 and at all times relevant herein, the physicians, physician assistants, residents, interns, fellows, nurses, staff and any other healthcare providers who provided care and treatment to Ms. Maldonado and Baby C.M.F. including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers were the actual, apparent, and/or ostensible employees, servants, and/or agents of Defendant Temple University Hospital and were acting within the course and scope of their employment, service and/or agency with Defendant Temple University Hospital while in and upon the business of said Defendant, and while under the direction, supervision and control of said Defendant.

75.    On or about July 20-22, 2023 and at all times relevant herein, Defendant Temple University Hospital , by and through its actual, apparent, and/or ostensible agents, servants, and/or employees, including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers did undertake the care of Ms. Maldonado and Baby C.M.F. during the course of the prenatal, intrapartum, postpartum, and/or neonatal periods.

76.    On or about July 20-22, 2023 and at all times relevant herein, the actual, apparent, and/or ostensible employees, servants, and/or agents Defendant Temple University Hospital were assigned, scheduled and/or charged with caring for Ms. Maldonado during her labor and delivery, and caring for the unborn minor-Plaintiff *in utero* before, during, and after delivery.

77.    On or about July 20-22, 2023 and at all times relevant herein, it then and there became the duty of Defendant Temple University Hospital and the aforementioned individual

16

healthcare providers to render health care services consistent with the medical requirements of the patients, Ms. Maldonado and Baby C.M.F., and to provide reasonable care/treatment and to act in accordance with the applicable standard of care or practice and to avoid harm.

78.     After assuming the care and treatment of Ms. Maldonado and Baby C.M.F. on July 20-22, 2023, Defendant Temple University Hospital, by and through its actual, apparent, and/or ostensible agents, servants, and/or employees including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers breached the standard of care and committed one or more of the following negligent acts and/or omissions:

    a.  Failure to appropriately manage the patient's labor and delivery;
    b.  Failure to ensure appropriate informed consent is obtained, including but not limited to adequately informing the patients of their conditions, the applicable risks of said conditions, and advising them on the most prudent course of treatment;
    c.  Failure to accurately and thoroughly record in the medical records all pertinent aspects of the condition of the patients and the care provided, including fetal heart rate findings, the progress of labor, vital signs, other actions taken, and/or pertinent information;
    d.  Failure to be aware of and completely appreciate the risks of this pregnancy, labor, and delivery, including but not limited to prenatal history, gestational hypertension and/or preeclampsia, abnormal vital signs, fetal heartrate abnormalities, insufficient progress of labor, excessive uterine activity, fetal intolerance of labor, etc. and timely advocate for change in the plan of care;
    e.  Failure to be aware of, understand, and/or appreciate the risks of neurologic injury from trauma and/or hypoxia-ischemia during the labor and delivery period and take appropriate action to avoid the same;
    f.  Failure to understand the risks of induction agents including Pitocin/Oxytocin and avoid injudicious use of the same;
    g.  Failure to recognize evidence of excessive uterine activity, appreciate the risks of excessive uterine activity, and/or avoid excessive uterine activity;
    h.  Failure to carefully assess for, recognize, and/or treat non-reassuring findings during this labor and delivery, including but not limited to fetal heartrate abnormalities, excessive uterine activity, abnormal lab values, abnormal vital signs, insufficient progress of labor, etc., and treat for the same including intrauterine resuscitation measures, intravenous fluids, repositioning, oxygen, timely notify the patients' provider(s) or physician(s) including notification of a surgical team, and

17

Case ID: 241100047<br>Case ID: 241100047


advocate for and/or perform earlier delivery via C-section;

i.  Failure to carefully monitor the condition of mother and baby so as to avoid the intrapartum development of hypoxic-ischemic injury;

j.  Failure to perform appropriate and necessary intrapartum fetal evaluations and/or interpret abnormal signs and/or symptoms and intervene sooner;

k.  Failure to ensure that the attending physician was adequately apprised of the patients' condition;

l.  Failure to ensure appropriate level of oversight and/or supervision of residents, fellows, or other doctors in training;

m.  Failure to timely appreciate non-reassuring fetal status including fetal distress and/or non-reassuring fetal status, and/or fetal intolerance to labor, and obtain consult or treatment by the patients' provider(s) or physician(s);

n.  Failure to recognize that during labor there were non-reassuring fetal heart rate changes including but not limited to loss of accelerations, reduced variability, and/or variable/late/prolonged decelerations, and report the same to the physician(s) and advocate for changes in the plan of care including earlier delivery by cesarean section;

o.  Failure to follow physician orders;

p.  Failure to be aware that the non-reassuring changes in the patients' condition can and did reflect a baby who was at risk for developing hypoxia-ischemia and suffering neurologic injury;

q.  Failure to timely and adequately communicate among other healthcare professionals regarding the status of mother and unborn baby, including advocacy for and/or initiation of changes in the plan of care and earlier delivery;

r.  Failure to timely take steps to move towards and/or advocate for earlier delivery by cesarean section of the unborn baby for non-reassuring fetal condition, including but not limited to intolerance of labor;

s.  Failure to be aware of and notify physician(s) and/or nurse(s) of signs of potential adverse intrapartum in utero events, including but not limited to late decelerations, variable decelerations, prolonged decelerations, decreased variability, and advocate for changes to the plan of care;

t.  Failure to advocate for and/or perform interventions and implement changes in the plan of care including but not limited to intrauterine resuscitation measures, discontinuation of Pitocin, abandoning attempts at vaginal delivery, and earlier delivery via Cesarean section;

u.  Failure to advocate for and/or provide appropriate care and treatment during the labor, delivery period and, if necessary, utilize the chain of command to effectuate the same if/when notification of the concerning signs and symptoms were not immediately responded to;

v.  Failure to timely and adequately inform and/or mobilize the necessary surgical personnel and equipment in order to perform a timely delivery;

w.  Failure to timely advocate for and/or perform a cesarean section to avoid hypoxia-ischemia;

18


Case ID: 241100047

     x. Failure to maintain and provide complete and adequate medical record documentation including but not limited to fetal monitoring, nursing notes, discharge summary, operative reports, resuscitation log, plan of care regarding notification of physicians, nurses and staff for assessment and treatment;

     y. Failure to promulgate, implement, maintain, and/or follow reasonable and appropriate policies and procedures;

     z. Failure to maintain appropriate labor and delivery staffing to ensure the provision of reasonable and appropriate patient care;

    aa. Failure to avoid any other breaches of the standard of care revealed during discovery.

79.     Reasonably prudent healthcare professionals and facilities under the same or similar circumstances would not have committed the aforementioned negligent acts and/or omissions.

80.     The negligence of this Defendant as set forth herein caused and/or substantially contributed to all of the injuries and damages that Plaintiffs have sustained as set forth herein.

81.     As a direct and proximate result of one or more of the aforesaid acts of negligence, Baby C.M.F. did suffer serious and permanent injuries as described herein including permanent brain damage and all resulting sequela.

82.     As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have suffered great pain, suffering, disability, emotional distress, loss of enjoyment of life, and will in the future continue to endure such pain, psychological neurological, and emotional injuries, and will incur large medical expenses.

83.     As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs did sustain other pecuniary loss and other expenses and damages and will in the future incur other pecuniary loss and expense.

84.     As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have incurred and will continue to incur medical and other expenses, including the

Case ID: 241100047 

need for attendant care and medical treatments/therapies for the rest of his life, which are reasonably necessary as a result of Baby C.M.F.'s injuries and special needs.

85.    As a direct and proximate result of the negligence of this Defendant, minor-Plaintiff has been forced to undergo extensive medical, medicinal, and therapeutic treatments, and will be required to undergo such care and treatment and expenses into the future, for all of which damages are claimed.

86.    As a direct and proximate result of the negligent conduct of this Defendant, minor-Plaintiff has been deprived of the ability to earn income, has suffered a severe loss and impairment of his earning capacity and power and/or to support himself, for all of which damages are claimed.

87.    As a direct and proximate result of the negligent conduct of this Defendant, Plaintiffs have suffered great pain, suffering, inconvenience, severe emotional distress, the limitation of movement in parts of his body, and the loss of life's pleasures, and will continue to suffer same in the future, for all of which damages are claimed.

WHEREFORE, Plaintiffs, C.M.F., a Minor, by and through the Guardian of his Estate, Fiduciary Trust Company International of Pennsylvania, and Corkell Maldonado, individually and in her own right, demand damages from Defendant Temple University Hospital jointly and severally, in an amount in excess of $50,000.00 and in excess of the amount requiring compulsory judicial arbitration, together with interest and costs thereon, as allowed by law.

## COUNT II: Institutional / Corporate Negligence
### (Plaintiffs v. Temple University Hospital)

88.    Plaintiffs incorporate by reference the allegations contained in all previous paragraphs as if fully restated herein.

89.    On or about July 20-22, 2023 and at all times relevant herein, Defendant Temple

Case ID: 241100047
Case ID: 241100047

University Hospital did undertake the care of Ms. Maldonado and Baby C.M.F. during the course of the prenatal, intrapartum, postpartum, and/or neonatal periods.

90.    As of July 20-22, 2023 and at all times relevant herein, Defendant Temple University Hospital owed Plaintiffs an independent duty of care to ensure the Plaintiffs' safety and wellbeing while at its facility.

91.    As of July 20-22, 2023 and at all times relevant herein, Defendant Temple University Hospital breached the corporate duty owed to the Plaintiffs and was guilty of one or more of the following negligent acts and/or omissions:

     a.  Failure to ensure the maintenance of safe and adequate facilities and equipment for the treatment of Plaintiffs;

     b.  Failure to maintain appropriate labor and delivery staffing to ensure the provision of reasonable and appropriate patient care;

     c.  Failure to select and retain only competent physicians, residents, nurses, technicians, and others who provided care and treatment to the Plaintiffs as described herein;

     d.  Failure to appropriately train, supervise, and/or oversee all persons who practice medicine and/or nursing within its facilities, including the physicians, residents, nurses, and other healthcare providers who treated Plaintiffs as described herein;

     e.  Failure to promulgate, implement, maintain, and/or enforce reasonable and appropriate rules, regulations, policies, procedures, and/or protocols to ensure an appropriate quality of patient care;

     f.  Failure to ensure the timely consultation, evaluation, diagnosis, and/or treatment of its patients, including the Plaintiffs, by appropriate healthcare providers;

     g.  Failure to comply with appropriate policies and practices of the Joint Commission on the Accreditation of Healthcare Organizations ("JCHAO") and/or other appropriate accreditation body;

     h.  Failure to avoid any other breaches of the standard of care revealed during discovery;

92.    Reasonably prudent healthcare facilities under the same or similar circumstances would not have committed the aforementioned negligent acts and/or omissions.

93.    This Defendant has actual or constructive knowledge of its failures as described herein.

94.    The negligence of this Defendant as set forth herein caused and/or substantially



Case ID: 241100047
Case ID: 241100047

contributed to all of the injuries and damages that Plaintiffs have sustained as set forth herein.

95.    As a direct and proximate result of one or more of the aforesaid acts of negligence, Baby C.M.F. did suffer serious and permanent injuries as described herein including permanent brain damage and all resulting sequela.

96.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have suffered great pain, suffering, disability, emotional distress, loss of enjoyment of life, and will in the future continue to endure such pain, psychological neurological, and emotional injuries, and will incur large medical expenses.

97.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs did sustain other pecuniary loss and other expenses and damages and will in the future incur other pecuniary loss and expense.

98.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have incurred and will continue to incur medical and other expenses, including the need for attendant care and medical treatments/therapies for the rest of his life, which are reasonably necessary as a result of Baby C.M.F.'s injuries and special needs.

99.    As a direct and proximate result of the negligence of this Defendant, minor-Plaintiff has been forced to undergo extensive medical, medicinal, and therapeutic treatments, and will be required to undergo such care and treatment and expenses into the future, for all of which damages are claimed.

100.    As a direct and proximate result of the negligent conduct of this Defendant, minor-Plaintiff has been deprived of the ability to earn income, has suffered a severe loss and impairment of his earning capacity and power and/or to support himself, for all of which damages are claimed.

101.    As a direct and proximate result of the negligent conduct of this Defendant,

Case ID: 241100047
Case ID: 241100047

Plaintiffs have suffered great pain, suffering, inconvenience, severe emotional distress, the limitation of movement in parts of his body, and the loss of life's pleasures, and will continue to suffer same in the future, for all of which damages are claimed.

WHEREFORE, Plaintiffs, C.M.F., a Minor, by and through the Guardian of his Estate, Fiduciary Trust Company International of Pennsylvania, and Corkell Maldonado, individually and in her own right, demand damages from Defendant Temple University Hospital jointly and severally, in an amount in excess of $50,000.00 and in excess of the amount requiring compulsory judicial arbitration, together with interest and costs thereon, as allowed by law.

### COUNT III: Medical Negligence / Vicarious Liability
**(Plaintiffs v. Temple University Health System)**

102.    Plaintiffs incorporate by reference the allegations contained in all previous paragraphs as if fully restated herein.

103.    On or about July 20-22, 2023 and at all times relevant herein, the physicians, physician assistants, residents, interns, fellows, nurses, staff and any other healthcare providers who provided care and treatment to Ms. Maldonado and Baby C.M.F. including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers were the actual, apparent, and/or ostensible employees, servants, and/or agents of Defendant Temple University Health System and were acting within the course and scope of their employment, service and/or agency with Defendant Temple University Health System while in and upon the business of said Defendant, and while under the direction, supervision and control of said Defendant.

Case ID: 241100047
Case ID: 241100047

104.    On or about July 20-22, 2023 and at all times relevant herein, Defendant Temple University Health System, by and through its actual, apparent, and/or ostensible agents, servants, and/or employees, including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve Serino, M.D.; and/or other healthcare providers did undertake the care of Ms. Maldonado and Baby C.M.F. during the course of the prenatal, intrapartum, postpartum, and/or neonatal periods.

105.    On or about July 20-22, 2023 and at all times relevant herein, the actual, apparent, and/or ostensible employees, servants, and/or agents Defendant Temple University Health System were assigned, scheduled and/or charged with caring for Ms. Maldonado during her labor and delivery, and caring for the unborn minor-Plaintiff *in utero* before, during, and after delivery.

106.    On or about July 20-22, 2023 and at all times relevant herein, it then and there became the duty of Defendant Temple University Health System and the aforementioned individual healthcare providers to render health care services consistent with the medical requirements of the patients, Ms. Maldonado and Baby C.M.F., and to provide reasonable care/treatment and to act in accordance with the applicable standard of care or practice and to avoid harm.

107.    After assuming the care and treatment of Ms. Maldonado and Baby C.M.F. on July 20-22, 2023, Defendant Temple University Health System, by and through its actual, apparent, and/or ostensible agents, servants, and/or employees including but not limited to April Dobkin, M.D.; Michelle Benassi, M.D.; Clinton Turner, M.D.; Felicia Johnson-Ekere, R.N.; Daniele McFadden, R.N.; Tiana Acosta, M.D.; Nishanth Sidduri, M.D.; Ashley Harvard, M.D.; Maeve

24

Serino, M.D.; and/or other healthcare providers breached the standard of care and committed one

or more of the following negligent acts and/or omissions:

    a. Failure to appropriately manage the patient's labor and delivery;
    b. Failure to ensure appropriate informed consent is obtained, including but not limited to adequately informing the patients of their conditions, the applicable risks of said conditions, and advising them on the most prudent course of treatment;
    c. Failure to accurately and thoroughly record in the medical records all pertinent aspects of the condition of the patients and the care provided, including fetal heart rate findings, the progress of labor, vital signs, other actions taken, and/or pertinent information;
    d. Failure to be aware of and completely appreciate the risks of this pregnancy, labor, and delivery, including but not limited to prenatal history, gestational hypertension and/or preeclampsia, abnormal vital signs, fetal heartrate abnormalities, insufficient progress of labor, excessive uterine activity, fetal intolerance of labor, etc. and timely advocate for change in the plan of care;
    e. Failure to be aware of, understand, and/or appreciate the risks of neurologic injury from trauma and/or hypoxia-ischemia during the labor and delivery period and take appropriate action to avoid the same;
    f. Failure to understand the risks of induction agents including Pitocin/Oxytocin and avoid injudicious use of the same;
    g. Failure to recognize evidence of excessive uterine activity, appreciate the risks of excessive uterine activity, and/or avoid excessive uterine activity;
    h. Failure to carefully assess for, recognize, and/or treat non-reassuring findings during this labor and delivery, including but not limited to fetal heartrate abnormalities, excessive uterine activity, abnormal lab values, abnormal vital signs, insufficient progress of labor, etc., and treat for the same including intrauterine resuscitation measures, intravenous fluids, repositioning, oxygen, timely notify the patients' provider(s) or physician(s) including notification of a surgical team, and advocate for and/or perform earlier delivery via C-section;
    i. Failure to carefully monitor the condition of mother and baby so as to avoid the intrapartum development of hypoxic-ischemic injury;
    j. Failure to perform appropriate and necessary intrapartum fetal evaluations and/or interpret abnormal signs and/or symptoms and intervene sooner;
    k. Failure to ensure that the attending physician was adequately apprised of the patients' condition;
    l. Failure to ensure appropriate level of oversight and/or supervision of residents, fellows, or other doctors in training;
    m. Failure to timely appreciate non-reassuring fetal status including fetal distress and/or non-reassuring fetal status, and/or fetal intolerance to labor, and obtain consult or treatment by the patients' provider(s) or physician(s);
    n. Failure to recognize that during labor there were non-reassuring fetal heart rate changes including but not limited to loss of accelerations, reduced variability, and/or variable/late/prolonged decelerations, and report the same to the


Case ID: 241100047

physician(s) and advocate for changes in the plan of care including earlier delivery by cesarean section;

o. Failure to follow physician orders;

p. Failure to be aware that the non-reassuring changes in the patients' condition can and did reflect a baby who was at risk for developing hypoxia-ischemia and suffering neurologic injury;

q. Failure to timely and adequately communicate among other healthcare professionals regarding the status of mother and unborn baby, including advocacy for and/or initiation of changes in the plan of care and earlier delivery;

r. Failure to timely take steps to move towards and/or advocate for earlier delivery by cesarean section of the unborn baby for non-reassuring fetal condition, including but not limited to intolerance of labor;

s. Failure to be aware of and notify physician(s) and/or nurse(s) of signs of potential adverse intrapartum in utero events, including but not limited to late decelerations, variable decelerations, prolonged decelerations, decreased variability, and advocate for changes to the plan of care;

t. Failure to advocate for and/or perform interventions and implement changes in the plan of care including but not limited to intrauterine resuscitation measures, discontinuation of Pitocin, abandoning attempts at vaginal delivery, and earlier delivery via Cesarean section;

u. Failure to advocate for and/or provide appropriate care and treatment during the labor, delivery period and, if necessary, utilize the chain of command to effectuate the same if/when notification of the concerning signs and symptoms were not immediately responded to;

v. Failure to timely and adequately inform and/or mobilize the necessary surgical personnel and equipment in order to perform a timely delivery;

w. Failure to timely advocate for and/or perform a cesarean section to avoid hypoxia-ischemia;

x. Failure to maintain and provide complete and adequate medical record documentation including but not limited to fetal monitoring, nursing notes, discharge summary, operative reports, resuscitation log, plan of care regarding notification of physicians, nurses and staff for assessment and treatment;

y. Failure to promulgate, implement, maintain, and/or follow reasonable and appropriate policies and procedures;

z. Failure to maintain appropriate labor and delivery staffing to ensure the provision of reasonable and appropriate patient care;

aa. Failure to avoid any other breaches of the standard of care revealed during discovery.

108.    Reasonably prudent healthcare professionals and facilities under the same or similar circumstances would not have committed the aforementioned negligent acts and/or omissions.

109.    The negligence of this Defendant as set forth herein caused and/or substantially

26



contributed to all of the injuries and damages that Plaintiffs have sustained as set forth herein.

110.    As a direct and proximate result of one or more of the aforesaid acts of negligence, Baby C.M.F. did suffer serious and permanent injuries as described herein including permanent brain damage and all resulting sequela.

111.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have suffered great pain, suffering, disability, emotional distress, loss of enjoyment of life, and will in the future continue to endure such pain, psychological neurological, and emotional injuries, and will incur large medical expenses.

112.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs did sustain other pecuniary loss and other expenses and damages and will in the future incur other pecuniary loss and expense.

113.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have incurred and will continue to incur medical and other expenses, including the need for attendant care and medical treatments/therapies for the rest of his life, which are reasonably necessary as a result of Baby C.M.F.'s injuries and special needs.

114.    As a direct and proximate result of the negligence of this Defendant, minor-Plaintiff has been forced to undergo extensive medical, medicinal, and therapeutic treatments, and will be required to undergo such care and treatment and expenses into the future, for all of which damages are claimed.

115.    As a direct and proximate result of the negligent conduct of this Defendant, minor-Plaintiff has been deprived of the ability to earn income, has suffered a severe loss and impairment of his earning capacity and power and/or to support himself, for all of which damages are claimed.

116.    As a direct and proximate result of the negligent conduct of this Defendant,

Case ID: 241100047
Case ID: 241100047

Plaintiffs have suffered great pain, suffering, inconvenience, severe emotional distress, the limitation of movement in parts of his body, and the loss of life's pleasures, and will continue to suffer same in the future, for all of which damages are claimed.

WHEREFORE, Plaintiffs, C.M.F., a Minor, by and through the Guardian of his Estate, Fiduciary Trust Company International of Pennsylvania, and Corkell Maldonado, individually and in her own right, demand damages from Defendant Temple University Health System jointly and severally, in an amount in excess of $50,000.00 and in excess of the amount requiring compulsory judicial arbitration, together with interest and costs thereon, as allowed by law.

## COUNT IV: Institutional / Corporate Negligence
### (Plaintiffs v. Temple University Health System)

117.    Plaintiffs incorporate by reference the allegations contained in all previous paragraphs as if fully restated herein.

118.    On or about July 20-22, 2023 and at all times relevant herein, Defendant Temple University Health System did undertake the care of Ms. Maldonado and Baby C.M.F. during the course of the prenatal, intrapartum, postpartum, and/or neonatal periods.

119.    As of July 20-22, 2023 and at all times relevant herein, Defendant Temple University Health System owed Plaintiffs an independent duty of care to ensure the Plaintiffs' safety and wellbeing while at its facility.

120.    As of July 20-22, 2023 and at all times relevant herein, Defendant Temple University Health System breached the corporate duty owed to the Plaintiffs and was guilty of one or more of the following negligent acts and/or omissions:

    a.    Failure to ensure the maintenance of safe and adequate facilities and equipment for the treatment of Plaintiffs;

    b.    Failure to maintain appropriate labor and delivery staffing to ensure the provision

Case ID: 241100047

of reasonable and appropriate patient care;

c.  Failure to select and retain only competent physicians, residents, nurses, technicians, and others who provided care and treatment to the Plaintiffs as described herein;

d.  Failure to appropriately train, supervise, and/or oversee all persons who practice medicine and/or nursing within its facilities, including the physicians, residents, nurses, and other healthcare providers who treated Plaintiffs as described herein;

e.  Failure to promulgate, implement, maintain, and/or enforce reasonable and appropriate rules, regulations, policies, procedures, and/or protocols to ensure an appropriate quality of patient care;

f.  Failure to ensure the timely consultation, evaluation, diagnosis, and/or treatment of its patients, including the Plaintiffs, by appropriate healthcare providers;

g.  Failure to comply with appropriate policies and practices of the Joint Commission on the Accreditation of Healthcare Organizations ("JCHAO") and/or other appropriate accreditation body;

h.  Failure to avoid any other breaches of the standard of care revealed during discovery;

121.    Reasonably prudent healthcare facilities under the same or similar circumstances would not have committed the aforementioned negligent acts and/or omissions.

122.    This Defendant has actual or constructive knowledge of its failures as described herein.

123.    The negligence of this Defendant as set forth herein caused and/or substantially contributed to all of the injuries and damages that Plaintiffs have sustained as set forth herein.

124.    As a direct and proximate result of one or more of the aforesaid acts of negligence, Baby C.M.F. did suffer serious and permanent injuries as described herein including permanent brain damage and all resulting sequela.

125.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have suffered great pain, suffering, disability, emotional distress, loss of enjoyment of life, and will in the future continue to endure such pain, psychological neurological, and emotional injuries, and will incur large medical expenses.

126.    As a direct and proximate result of one or more of the aforesaid acts of negligence,

29



the Plaintiffs did sustain other pecuniary loss and other expenses and damages and will in the future incur other pecuniary loss and expense.

127.    As a direct and proximate result of one or more of the aforesaid acts of negligence, the Plaintiffs have incurred and will continue to incur medical and other expenses, including the need for attendant care and medical treatments/therapies for the rest of his life, which are reasonably necessary as a result of Baby C.M.F.'s injuries and special needs.

128.    As a direct and proximate result of the negligence of this Defendant, minor-Plaintiff has been forced to undergo extensive medical, medicinal, and therapeutic treatments, and will be required to undergo such care and treatment and expenses into the future, for all of which damages are claimed.

129.    As a direct and proximate result of the negligent conduct of this Defendant, minor-Plaintiff has been deprived of the ability to earn income, has suffered a severe loss and impairment of his earning capacity and power and/or to support himself, for all of which damages are claimed.

130.    As a direct and proximate result of the negligent conduct of this Defendant, Plaintiffs have suffered great pain, suffering, inconvenience, severe emotional distress, the limitation of movement in parts of his body, and the loss of life's pleasures, and will continue to suffer same in the future, for all of which damages are claimed.

WHEREFORE, Plaintiffs, C.M.F., a Minor, by and through the Guardian of his Estate, Fiduciary Trust Company International of Pennsylvania, and Corkell Maldonado, individually and in her own right, demand damages from Defendant Temple University Health System jointly and severally, in an amount in excess of $50,000.00 and in excess of the amount requiring compulsory judicial arbitration, together with interest and costs thereon, as allowed by law.

## COUNT V: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiffs v. All Defendants)

Case ID: 241100047

131.     Plaintiffs incorporate by reference the allegations contained in all previous paragraphs as if fully restated herein.

132.     As a result of the negligence and tortious conduct of all Defendants, jointly and severally, as well as the negligence and tortious conduct of their agents, servants and/or employees, and the resultant injuries suffered by her newborn baby, the plaintiff,  Corkell Maldonado has suffered significant mental anguish, emotional distress and related symptoms giving rise to her own individual claims for damages under the doctrine of Sinn v. Burd, 404 A.2d 672 (Pa. 1979) and its progeny of case law, including Love v Cramer, 606 A.2d 1175 (Pa. Super 1992).

133.     The plaintiff, Corkell Maldonado was present, contemporaneously witnessed and experienced first-hand the negligent acts and omissions of Defendants, as described herein, that resulted in the catastrophic brain injury and neurodevelopmental sequalae suffered by her newborn baby, as described herein.

134.     At all relevant times, plaintiff, Corkell Maldonado was intimately connected with, contemporaneously experienced and observed the injuries suffered by her baby during the time he should have been delivered, but negligently was not.

135.     Plaintiff, Corkell Maldonado was aware of and contemporaneously experienced Defendants' failure to timely deliver her baby and watched her baby's condition decline until the traumatic event of birth when her baby was born depressed, apneic and required emergent oxygenation, as described herein.

136.     The plaintiff, Corkell Maldonado witnessed and experienced first-hand the complications of her newborn baby's asphyxiated condition at birth which required urgent transfer to St Christopher's Hospital for Children for treatment of HIE and other interventions.

137.     As a result of having witnessed the negligent acts and omissions of Defendants the

Case ID: 241100047
Case ID: 241100047

traumatic consequences of same to her newborn baby, the plaintiff, Corkell Maldonado has in the past experienced, presently experience and in the future will continue to experience numerous physical manifestations of her severe emotional distress, including but not limited to sleeplessness, stress, anxiety, depression, nervousness, hopelessness, mental anguish, nightmares, headaches, upset stomach, nausea, vomiting, loss of appetite, apprehension profound sense of loss and other physical symptoms.

WHEREFORE, Plaintiff, Corkell Maldonado, individually and in her own right, demands damages from all Defendants jointly and severally, in an amount in excess of $50,000.00 and in excess of the amount requiring compulsory judicial arbitration, together with interest and costs thereon, as allowed by law.

<div style="margin-left:40%">

BEAM LEGAL TEAM

By:    */s/ Jack Beam*
        Jack Beam, Esquire

AND

STROKOVSKY LLC

Jordan Strokovsky, Esquire

**ATTORNEYS FOR PLAINTIFF**

</div>

Dated: October 31, 2024

Case ID: 241100047
Case ID: 241100047

Jack Beam, Esquire
Court I.D. No. 52519
BEAM LEGAL TEAM
954 W. Washington Blvd. #215
Chicago, IL 60607
(312) 733-0930  Phone
(312) 733-0921  Fax
jbeam@beamlegalteam.com

Attorney for Plaintiffs

Jordan Strokovsky, Esquire
Court I.D. No. 318811
STROKOVSKY LLC
1650 Market St., #3600
Philadelphia, PA 19103
(215) 317-6545 Phone
(215) 501-5556 Fax
jordan@actionafterinjury.com

Co-Counsel for Plaintiffs

---

| | |
|---|---|
| **C.M.F, a Minor, by and through the Guardian of his estate, FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA,** *et al.* | : COURT OF COMMON PLEAS<br>: PHILADELPHIA COUNTY<br>:<br>: October Term, 2024<br>: |
| Plaintiffs | : No.:<br>: |
| v. | :<br>: MAJOR JURY TRIAL IS DEMANDED. |
| **TEMPLE UNIVERSITY HOSPITAL, INC. d/b/a TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM, and/or TEMPLE HEALTH,** *et al.* | :<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

## CERTIFICATE OF MERIT AS TO DEFENDANT, TEMPLE UNIVERSITY HOSPITAL, INC.

I, Jack Beam, certify that:

☑ An appropriate licensed professional had supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable standards and that such conduct was a factual cause and/or increased the risk of harm sustained by minor-plaintiff; AND

☑ The claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a


Case ID: 241100047

factual cause of minor-plaintiff's injuries and/or increased the risk of harm to minor-plaintiff.

Respectfully submitted,

By:    _/s/ Jack Beam_____

Dated: October 31, 2024                    Attorney for Plaintiffs

2

Jack Beam, Esquire
Court I.D. No. 52519
BEAM LEGAL TEAM
954 W. Washington Blvd. #215
Chicago, IL 60607
(312) 733-0930  Phone
(312) 733-0921  Fax
jbeam@beamlegalteam.com

Jordan Strokovsky, Esquire
Court I.D. No. 318811
STROKOVSKY LLC
1650 Market St., #3600
Philadelphia, PA 19103
(215) 317-6545 Phone
(215) 501-5556 Fax
jordan@actionafterinjury.com

Attorney for Plaintiffs

Co-Counsel for Plaintiffs

| | | |
|---|---|---|
| **C.M.F, a Minor, by and through the Guardian of his estate, FIDUCIARY TRUST COMPANY INTERNATIONAL OF PENNSYLVANIA,** *et al.* | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| | : | October Term, 2024 |
| | : | |
| Plaintiffs | : | No.: |
| | : | |
| v. | : | |
| | : | MAJOR JURY TRIAL IS DEMANDED. |
| **TEMPLE UNIVERSITY HOSPITAL, INC. d/b/a TEMPLE UNIVERSITY HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM, and/or TEMPLE HEALTH,** *et al.* | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF MERIT AS TO DEFENDANT, TEMPLE UNIVERSITY HEALTH SYSTEM, INC.

I, Jack Beam, certify that:

☑ An appropriate licensed professional had supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the complaint, fell outside acceptable standards and that such conduct was a factual cause and/or increased the risk of harm sustained by minor-plaintiff; AND

☑ The claim that this defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a

Case ID: 241100047


factual cause of minor-plaintiff's injuries and/or increased the risk of harm to minor-plaintiff.

Respectfully submitted,

By:     */s/ Jack Beam*_____

Dated: October 31, 2024                 Attorney for Plaintiffs

2

**VERIFICATION**

I, Susan L. Bartels, verify that I am the Senior Trust Officer for the plaintiff herein

(Fiduciary Trust Company International of Pennsylvania—guardian of C.M.F.) and that the facts

set forth in the foregoing civil action complaint are true and correct to the best of my knowledge,

information and belief. I understand that false statements herein are made subject to the penalties

of 18 Pa. C. S. Section 4904 relating to unsworn falsification to authorities.

Dated:   10/31/2024

Susan L. Bartels, Fiduciary Trust
International of Pennsylvania

## VERIFICATION

I, Corkell Maldonado, individually and on behalf of the minor, C.M.F. as his guardian and natural parent, hereby verify that the facts set forth in the foregoing civil action complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C. S. Section 4904 relating to unsworn falsification to authorities.

Dated: 10/29/24

C Maldonado

Corkell Maldonado